# UNITED STATES DISTRICT COURT
### for the
Southern District of California

**FILED**
Aug 05 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/ VeronicaCota  DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  24MJ8661
)
White Apple iPhone )
Model: 14 Pro Max )
Seized as FP& F: 2024255100013902 Item: 001 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 08/05/2024

*Judge's signature*

City and state: El Centro, California          HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**     White Apple iPhone
Model: 14 Pro Max
Seized as FP& F: 2024255100013902 Item: 001
Seized from Vanessa MARTINEZ
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 27, 2024, up to and including July 27, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** White Apple iPhone
Model: 14 Pro Max
Seized as FP& F: 2024255100013902 Item: 001
Seized from Vanessa MARTINEZ
**(Target Device #1)**

**A-2:** White Vortex Cellphone
Model: HD55
Seized as FP& F: 2024255100013901 Item: 002
Seized from Jessica Sofia MENDOZA-Reyes
**(Target Device #2)**

**A-3:** Black TCL Cellphone
Model: 30XL
Seized as FP& F: 2024255100013901 Item: 003
Seized from Jessica Sofia MENDOZA-Reyes
**(Target Device #3)**

**A-4:** Blue Oppo Cellphone
Model: A57
Seized as FP& F: 2024255100013903 Item: 001
Seized from Cristian MONTES-Arellano
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Vanessa MARTINEZ (MARTINEZ) and Jessica Sofia MENDOZA-Reyes (MENDOZA) for transportation of illegal aliens Cristian MONTES-Arellano (MONTES) (the "Material

1

Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from MARTINEZ, MENDOZA, and the Material Witness on or about July 26, 2024, incident to the arrest of MARTINEZ, MENDOZA, and the Material Witness. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 26, 2024. Border Patrol Agent (BPA) J. Santelices was assigned to the Highway 86 Checkpoint near Westmorland, California of the Indio Border Patrol Station's Area of Responsibility. This checkpoint is a route commonly used by smuggling organizations due to it being a direct route to Interstate 10. Smuggling organizations also utilize this route because of the high volume of normal vehicle traffic and attempt to blend in with the local populace.

11. At approximately 8:50 A.M., a Chevrolet Hummer, bearing California license plates, approached the primary inspection area. BPA D. Tista observed an individual laying down in the back seat under a blanket and ordered the driver, who was later identified as Jessica Sofia MENDOZA-Reyes, to the secondary inspection area.

12. BPA Santelices approached the Hummer in the secondary inspection area, and opened the passenger side rear door and observed an individual, who was later identified as, Cristian MONTES-Arellano, laying down under a blanket on top of the rear seat. BPA Santelices identified himself as a Border Patrol Agent and attempted to wake up MONTES. BPA Santelices moved to the driver side rear passenger door to begin questioning after MONTES rose to a sitting position. BPA Santelices questioned MONTES as to her citizenship. MONTES was giving short answers and was avoiding answering BPA Santelices' questions. During further questioning, MONTES stated to BPA Santelices that she is a citizen of Mexico with no documents that would allow her to enter, live, or work in the United States legally.

13. BPA Santelices indicated to BPA E. Mota, and BPA S. Stypinski to detain the driver (MENDOZA) and front passenger, who was later identified as Vanessa MARTINEZ (MARTINEZ), and took them inside for further questioning. BPA Santelices then placed MENDOZA, MARTINEZ and MONTES under arrest.

14. During a Post-Miranda statement, MARTINEZ stated she is a United States Citizen. MARTINEZ stated that an unknown man told her that a lady was waiting for them near a Chevron gas station off Interstate 8. The individual they picked up was later identified as Cristian MONTES-Arellano. MARTINEZ shared her live location with the man who was giving her instructions guided her to where she should go to avoid checkpoints. MARTINEZ said she was originally going to take MONTES to San Bernardino but was then told she was going to drop her somewhere in Los Angeles, CA. MARTINEZ said she was going to be paid $ 1,000 United States Dollars for picking up and dropping off MONTES.

15. During a Post-Miranda statement, MENDOZA stated she was born in Michoacan, Mexico. MENDOZA is a current Legal Permanent Resident. MENDOZA claims she received a call from MARTINEZ asking if she could borrow her car. MENDOZA stated that MARTINEZ told her she was going to pick someone up near San Diego to make some extra money. MENDOZA stated that MARTINEZ made all the arrangements and was the only one who communicated with the smugglers. MENDOZA stated that MARTINEZ was in communication with the smuggler via cellphone and would tell her where to drive. MENDOZA stated that MARTINEZ shared her phone location with the smuggler the whole-time using WhatsApp. MENDOZA claimed knowledge that she knew the person they were going to pick up was illegal the whole time.

16. Material Witness MONTES stated she was born in Mexico. MONTES stated a vehicle stopped near her location, and she went inside without instruction from the occupants. MONTES stated there were two females in the vehicle. MONTES identified MENDOZA as the female driving the vehicle in which she was arrested by the U.S. Border Patrol. MONTES identified MARTINEZ as the female who was sitting in the front passenger side of the vehicle in which she was arrested by the U.S Border Patrol.

17. During a search incident to the arrest of MARTINEZ, MENDOZA, and the Material Witness, four cellphones were found: a white Apple iPhone (Target Device #1) was found in MARTINEZ's pocket by Agent Stypinski and MARTINEZ claimed

ownership of this cellphone. A white Vortex cellphone (Target Device #2) and a black TCL cellphone (Target Device #3) were found in the driver's side door pocket by BPA Bicondova and MENDOZA claimed ownership of both cellphones. A blue Oppo cellphone (Target Device #4) was found by BPA Tista inside of a black bag belonging to MONTES and MONTES claimed ownership of this cellphone. All cellphones were seized as evidence.

18.   I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on June 27, 2024, up to and including July 27, 2024, the day after the arrest of MARTINEZ, MENDOZA and the Material Witness.

## METHODOLOGY

19.   It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions

7

for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

22. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that MARTINEZ, MENDOZA, and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by MARTINEZ, MENDOZA, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 5th day of August, 2024.

_____  9:54 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**              White Apple iPhone
                     Model: 14 Pro Max
                     Seized as FP& F: 2024255100013902 Item: 001
                     Seized from Vanessa MARTINEZ
                     **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**   White Vortex Cellphone
Model: HD55
Seized as FP& F: 2024255100013901 Item: 002
Seized from Jessica Sofia MENDOZA-Reyes
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**       Black TCL Cellphone
               Model: 30XL
               Seized as FP& F: 2024255100013901 Item: 003
               Seized from Jessica Sofia MENDOZA-Reyes
               **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**  Blue Oppo Cellphone
Model: A57
Seized as FP& F: 2024255100013903 Item: 001
Seized from Cristian MONTES-Arellano
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 27, 2024, up to and including July 27, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.